IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MADISON RIVER MANAGEMENT )
COMPANY, )
 )
    Plaintiff, )
 )
    v. )       1:03CV00379
 )
BUSINESS MANAGEMENT SOFTWARE )
CORPORATION, a/k/a BMS, )
 )
    Defendant. )

MEMORANDUM OPINION and ORDER

OSTEEN, District Judge

    Plaintiff Madison River Management Company ("Plaintiff") originally brought this action against Defendant Business Management Software Corporation ("Defendant"). Defendant counterclaimed for copyright infringement under the Copyright Act of 1976 ("the Copyright Act"), as amended, 17 U.S.C. §§ 101 et seq., and for violations of state law. This court, on August 30, 2005, denied Plaintiff's motion for summary judgment on Defendant's counterclaims. Plaintiff now seeks to have that denial reconsidered. After examining each of Plaintiff's arguments for reconsideration, the court will not change its ruling.

## I. FACTUAL BACKGROUND

Plaintiff is a rural telephone service provider. Defendant is a software company that developed a computer program for telephone service providers. The program is called Ticket Control System ("TCS"). TCS is a suite of applications that aids telephone service providers in managing problems within their networks. Some of the specific programs in this suite are TCS Control, TCS Provide, and TCS Resolve, all of which Defendant built to tackle a specific telephone system problem. The TCS suite takes raw data and configures that data in a special format, or the "TCS Database," in order to correct problems on the telephone network.

Defendant and Plaintiff agreed during September 2000 that Plaintiff would purchase fifteen TCS Control licenses and fifteen TCS Provide licenses to use. Plaintiff agreed to pay for any use exceeding the fifteen licenses. A dispute developed over what constituted use of a license. Plaintiff thought it used a license anytime a single person accessed the TCS system, no matter how many times that one person accessed the system. Defendant argued Plaintiff used a license each time anyone or another computer accessed the TCS system, even if the entity accessed the system multiple times. The parties resolved this dispute by amending their first agreement on December 5, 2002.

Further disagreements developed over the contract and its amendment. Those disagreements led to the current litigation. Plaintiff filed an action seeking a declaration that all its agreements were in full effect and that Plaintiff's use of Defendant's software was not copyright infringement. Defendant counterclaimed for copyright infringement and state law claims for fraud and breach of contract.

**II. ANALYSIS**

A. Standard for Reconsideration

The court's denial of summary judgment is an interlocutory order. Thus, this court "may revisit i[t] . . . at any time prior to final judgment under . . . its inherent authority." United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003). A motion for reconsideration, however, is limited in its scope. "A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law, or when the party produces new evidence that could not have been obtained through the exercise of due diligence." Id. at 474 (quoting Fidelity State Bank, Garden City, Kan. v. Oles, 130 B.R. 578, 581 (D. Kan. 1991)). Thus, the reconsideration motion is not to present a better and more compelling argument that the party could have presented in the original briefs.

3

B.  Plaintiff's Grounds for Reconsideration

1.  The Court's Choice-of-Law Analysis

The court denied Plaintiff's motion for summary judgment on Defendant's fraud-based claims because Plaintiff failed to argue under the appropriate substantive law for those claims, Colorado law. A federal court acting on a state law based claim must apply the choice-of-law rules of the forum state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021 (1941). Thus, this court was obligated to apply North Carolina's choice-of-law rules. Plaintiff initially handled the choice-of-law analysis in about five sentences, stating North Carolina law applies to the fraud claims. Plaintiff now argues in over five pages of text why North Carolina law applies, devoting some text to showing why this court was clearly incorrect and some to new argument. Plaintiff argues that under North Carolina conflicts law, North Carolina substantive law applies to the fraud claim, and even if Colorado law applies, no actual conflict between Colorado and North Carolina law exists; thus, the actual choice of law does not matter, and this court should return to and reconsider the summary judgment motion because requiring Plaintiff to argue under Colorado law was clearly in error.

The state law claims at issue are fraud claims. In North Carolina, the substantive law of where the tort occurred governs the claim. See Boudreau v. Baughman, 322 N.C. 331, 335-36

4

(1988). In the instant case, Plaintiff made the alleged fraudulent statements in North Carolina to Defendant, which is a business with a principal place of business in Colorado. Plaintiff argues that the choice of law is clearly North Carolina because the rule for North Carolina is the "fraud [occurs] <u>where the misrepresentation is received</u>." (Pl.'s Br. Supp. Mot. Reconsider at 5 (emphasis added).) Plaintiff cites <u>Jordan v. Shaw Indus., Inc.</u>, No. 96-2189, 1997 WL 734029 (4th Cir. Nov. 26, 1997). What Plaintiff does not bother to explain is this statement from <u>Jordan</u>: "When a person sustains loss by fraud, the place of the wrong is <u>where the loss is sustained, not where fraudulent representations are made</u>." <u>Id.</u> at *3 (quoting Restatement (First) Conflict of Law § 377 n.4 (1934)). In <u>Jordan</u>, the court held the injured party's reasonable reliance on the fraudulent statement was the injury, and the law where the injury occurred governed the claims. <u>Id.</u> at *3. Under these facts, the injury, the reasonable reliance, actually occurred where the fraudulent statement was made. <u>Id.</u> Thus, the law of where the fraudulent statement occurred did govern the action, as Plaintiff states, but that was only because the fraudulent statement and the harm occurred in the same state. The <u>Jordan</u> court's rule, however, is the law of where the <u>injury occurs</u> governs a fraud claim. Plaintiff's assertion that fraud occurs where the fraudulent statement is made is, thus, not correct. The court will not reconsider its opinion requiring Colorado law

5

to be applied because Plaintiff's showing for reconsideration is not sufficient.

Moreover, this court will not consider the new argument that there is no actual conflict between Colorado and North Carolina law. This argument was not presented in the original brief in support of summary judgment. Moreover, the facts show fraud occurring in North Carolina upon a Colorado business. Given that a Colorado business is involved, the damages, such as financial harm, could logically occur where Defendant's principal place of business exists, in Colorado. When this fact joins the choice-of-law rule for fraud, clearly, Colorado substantive law <u>could</u> apply. Plaintiff should have argued in the original brief, instead of a reconsideration motion, that Colorado law could apply, and even if it does not, no conflict exists between the applicable North Carolina and Colorado laws. Obviously, the five sentences or so in the initial brief were not sufficient to argue the choice-of-law issue, and the court will not hear new argument now.

    2.   Counterclaims for Copyright Infringement

Plaintiff seeks reconsideration of the court's denial of summary judgment on Claims 2, 3, and 4 of Defendant's counterclaims. These were all copyright infringement claims. Plaintiff argues that the court constructed facts without seeking

6

any support from the record, and thus, the court should grant summary judgment with the record as Plaintiff views it.

### i.   Claim 2

The basis of Claim 2 was Plaintiff copied data from the TCS Database, a database that was output of the TCS programs, and generated reports from the data; Defendant claims those acts constituted copyright infringement. Plaintiff challenges the following holdings in relation to this infringement claim:  (1) the TCS Database was material that could be subject to copyright protection; (2) Plaintiff's use of the data was not fair use, and protected from infringement claims, under the Copyright Act; and (3) Plaintiff's use was not an "essential step," which the Copyright Act defines as a noninfringing use.  The court considers each challenge in turn.

### a.   TCS Database Could Not Be Copyrighted

This court held that because the TCS Database could be subject to copyright, Plaintiff was not entitled to summary judgment.  The court viewed Plaintiff's argument as follows: Plaintiff claimed the database could not be copyrighted, and thus, no copyright existed for Plaintiff to infringe when its programs used the database.  Plaintiff attacks this assessment clearly:  "Madison's point [in the original summary judgment brief], however, was not to dispute whether such an arrangement <u>could</u> be copyrighted, but rather to demonstrate that [Defendant]

7

did not in fact claim a copyright in the TCS Database." (Pl.'s Br. Supp. Mot. Reconsideration at 11.) Thus, the argument is Defendant never registered a copyright on the output of the database and, implicitly, Defendant's existing copyright on the TCS program does not cover the output. Implicit in the court's original analysis, however, was that Defendant's copyright on the TCS program covered the program's output database.

In the original brief, Plaintiff's heading in the relevant section of argument was "The 'TCS Data base' Is Not Part [o]f [Defendant]'s Copyright." (Pl.'s Br. Supp. Mot. Summ. J. at 13.) Plaintiff then stated, "[Defendant] claims a copyright only on its software, but has no copyright on the work product of the software." (Id. at 14.) These statements are consistent with alternative arguments: (1) the Defendant does not claim a copyright on the work output (Plaintiff's current argument) or (2) even if Defendant claimed a copyright, such material cannot actually be copyrighted.

Plaintiff offers an example which states, "[t]his brief was created with Microsoft's copyrighted Word software, but Microsoft <u>clearly could not claim a copyright on this brief</u>." (Id. (emphasis added).) Plaintiff's explanation with the example strongly suggests its claim is work product of software, such as the TCS Database, can <u>never</u> be copyrighted. Clearly, this is not Plaintiff's argument in the reconsideration motion. Plaintiff

8

has not convinced the court that it obviously misunderstood the original argument, and this motion is not an opportunity for Plaintiff to redefine and sharpen its argument.

        b.    Plaintiff's Use Was "Fair Use"

Plaintiff claimed that its use of the TCS Database was fair use, which is protected activity under the Copyright Act. See 17 U.S.C. § 107. This court held it could not grant summary judgment on the issue of whether this was fair use under the Copyright Act. Under the relevant law, the court held that it was fair use to extract raw data from the TCS database, but not to extract data to take advantage of the special way the TCS program arranges the data (by imposing a data structure upon the raw data to create a database). Thus, the court did not find undisputed evidence that Plaintiff's use of the TCS database was only to extract its raw data and not to reap the benefits of the organization TCS imposed upon the data.

Plaintiff argues no evidence supports the conclusion that Plaintiff extracted the data from TCS to take advantage of the TCS data orientation. This court held the mere act of running reports from the TCS database could show that Plaintiff took advantage of the TCS data structure. The court bolstered this conclusion on the testimony of Defendant's president Gregory Howe. Howe stated, "I think the reason customers pay us for ours is we do, I dare say, a tad bit more than just regurgitating out

9

low-level information." (Def.'s Br. Opp'n Mot. Summ. J. Ex. C, Howe Dep. 10/11/04 at 31.) The court found that "ours" was the TCS data structure. Plaintiff now argues "ours" is clearly Defendant's overall software program, meaning the advantage of which Howe spoke was not of the TCS database but simply another computer program. This testimony, in Plaintiff's view, should show no evidence supports the court's conclusion that an advantage to the TCS Database exists. Madison cites nothing to support this contention other than it should be "plain" to anyone who reads Howe's statement. (Pl.'s Br. Supp. Mot. Reconsideration at 12.) Besides a conclusory statement that the court's assessment of the facts is plainly against what should be plainly clear to anyone, Plaintiff shows no clear error in the court's assessment of the facts. The motion to reconsider on this ground is denied.

        c.    Plaintiff's Use Was an "Essential Step"

Finally, the court held that Plaintiff could not establish as a matter of law that its use of the TCS database was an essential step in using the TCS program under 17 U.S.C. § 117. This section protects a use from being infringing if that use is essential to using the original copyrighted material. The court ruled against granting summary judgment because "[t]here are no allegations that Madison could not make actual use of the TCS software without copying the TCS database." (Mem. Op. at 33.)

10

Plaintiff's ground for reconsideration is an attempt to reargue the facts. Plaintiff contends that in Howe's deposition, he stated that once the raw data is in the TCS database, one cannot extract that data without the TCS data structure. This, however, does not show that extraction of the raw data is an essential step in using the copyrighted material; Plaintiff does not show one cannot use the TCS program without extracting his data back out. Nor does Plaintiff point to case law showing this is sufficient to grant judgment as a matter of law. The court denies the motion to reconsider on this ground.

      ii.  Claim 3

In Claim 3, Defendant asserts Plaintiff infringed its copyright in the TCS code by using another program called "Remedy" to access the TCS database. The court held that merely getting the raw data out of the TCS database for Remedy to use was fair use. The court held that it was not fair use as a matter of law to get that data from TCS, put it into Remedy, and then view the information in Remedy instead of TCS. Viewing the data in Remedy instead of TCS avoided using TCS and incurring a license fee. The court referred to this as a "workaround."

Plaintiff argues (1) a workaround was never pled; (2) the only basis for a workaround is hearsay, which is not sufficient to preclude summary judgment; (3) the court cites no evidence that Madison took advantage of the TCS structure imposed upon the

11

data it extracted to use for Remedy; (4) the court "assumes . . . when [Plaintiff] viewed its . . . information in Remedy, Madison somehow used" Defendant's copyrighted structures (Pl.'s Br. Supp. Mot. Reconsideration at 14); and (5) the court overemphasized the fact that Plaintiff used the data for a commercial use in applying the relevant multifactor test for determining fair use.

Plaintiff cites no statute or rule requiring a workaround to be pled specifically. As to the second through fourth grounds, Plaintiff argues that the court wrongly considered Howe's deposition in finding there could be a workaround that is not fair use.

All of Plaintiff's arguments for the second through fourth grounds, however, should have been addressed in the original motion. Howe's testimony clearly was that Plaintiff found a way around using TCS, and incurring a license fee, while also reaping the benefits of the TCS system by viewing the data in the special way TCS processes it. Thus, the available evidence showed this workaround was a basis for infringement, and Plaintiff should have argued against that basis in the first instance.

As for the fifth ground, Plaintiff shows no clear error of law. Plaintiff states the court overemphasized the fact that Plaintiff's use of the data was commercial, and the court must consider that fact with factors for fair use. Plaintiff further argues that all the cases it cites show fair commercial usages.

Apparently, Plaintiff argues that because all of its cases show fair use in commercial settings, its use of the TCS data is obviously fair use because it occurred in a commercial setting. The argument is hardly convincing and provides no grounds for reconsideration.

   iii. Claim 4

In Claim 4, Defendant asserted Plaintiff infringed its copyright by writing a computer program that used and connected to TCS's database. This court denied summary judgment because there were facts suggesting Plaintiff copied some of Defendant's computer program in writing this computer program, and if true, those acts would be copyright infringement.

Plaintiff's argument for reconsideration is that the court made its ruling without any competent evidence. Plaintiff claims all the evidence that could support this copying would be hearsay and "mere 'use' of a copyrighted text in any event does not constitute copyright infringement—either evidence of actual copying, or evidence of access and 'substantial similarity' is required." (Pl.'s Br. Supp. Mot. Reconsideration at 16 (citing <u>Lyons P'ship L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789, 801 (4th Cir. 2001).).

The court expresses no opinion on the hearsay issues. However, these facts were present in the record before Plaintiff's summary judgment motion, and Plaintiff should have

13

anticipated any factual counterarguments against its summary judgment motion and dealt with that in the original brief.  The fact that Defendant's response was not filed, which precluded Plaintiff's reply, does not prevent Plaintiff from setting forth the strongest arguments in the first brief.  Plaintiff's failure to consider all facts and counterarguments in the original brief is not a ground to reconsider the court's ruling.

        3.    Final State Law Claims

Plaintiff states the court should reconsider its denial of summary judgment on Claims 5 and 9, which were both breach of contract claims.  The court denied summary judgment on Claim 5 because Plaintiff had not shown as a matter of law the contract in question had not been procured through fraud.  The fraud discussed above at section II.B.1 would have rendered this contract of no effect.  Plaintiff argues Claim 5 should be reconsidered because it has shown as a matter of law Plaintiff did not procure the contract through fraud or misrepresentation.  As stated above, Plaintiff failed to show no fraud occurred as a matter of law because it did not argue under the correct law.  No grounds for reconsideration exist.

The court denied summary judgment on Claim 9 because, even though the written contract at issue was not breached, Plaintiff may have breached an oral agreement that supplemented the written contract or have breached an implied obligation of good faith and

14

fair dealing.  Plaintiff claims the clear error in this denial of summary judgment is that these types of breaches were not asserted.  The counterclaim simply states Plaintiff breached the material terms of this agreement.  No where in its pleadings does Defendant limit itself to the written terms of the agreement, and Plaintiff does not show any case law or rule requiring such matter be specifically pled.  Plaintiff's grounds for reconsideration of Claim 9 are meritless.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Reconsideration [98] is denied.

This the 25th day of November 2005.

> *[signature]*
> _____
> United States District Judge

15