IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MADISON RIVER MANAGEMENT )
COMPANY, )
 )
    Plaintiff, )
 )
    v. )      1:03CV00379
 )
BUSINESS MANAGEMENT SOFTWARE )
CORPORATION, a/k/a BMS, )
 )
    Defendant. )

MEMORANDUM OPINION

OSTEEN, District Judge

    Pending before the court is Counterclaim-Defendant Madison River Management Company's ("Madison River") motion, pursuant to Federal Rule of Civil Procedure 50(a), for judgment as a matter of law after the close of Counterclaim-Plaintiff Business Management Software Corporation's ("BMS") case-in-chief. For the reasons stated below, the court will grant the motion for judgment as a matter of law and enter judgment accordingly.

I.    **FACTUAL BACKGROUND**

    The brief facts, in the most favorable light to BMS, are as follows. Madison River is a telecommunications provider. BMS is a manufacturer of software for telecommunications providers. During 2000, the parties created the Software Licensing Agreement ("SLA"), in which Madison River licensed some of BMS's software. A dispute developed over the SLA involving how many licenses to

BMS's software Madison River had. BMS claimed Madison River used more licenses than it paid for under the SLA, an act that BMS claimed breached the SLA. Madison River then allegedly began seeking other ways to take advantage of the benefits of BMS's software without using a license. Madison River (1) used a separate program to look at the database BMS's program created and take advantage of all the enhancements BMS's software imposed on the data, without using a license, and (2) copied data from the same database to use in other programs and take advantage of the benefits BMS's programs imposed upon the data, again, without using a license. In a separate act, Madison River allegedly copied technical data from specifications that BMS sent for a "CUTS" program, an act that the SLA specifically barred.

The parties settled some or all of these disputes with a First Amendment to the SLA ("First Amendment") and a Letter of Intent (collectively, "2002 settlement agreement"). The First Amendment contained a broadly worded release that released all claims and disputes arising in connection with Madison River's obligations under the SLA. Separately, the Letter of Intent contained obligations for Madison River to conduct analysis to see if it wanted to consider "rolling out" additional BMS products. The scope of the analysis was not fully defined within the Letter of Intent. If it chose not to roll out products, however, Madison River then had to pay a sum of money to BMS, which would terminate the Letter of Intent's obligations. Madison River eventually decided against roll out and paid the

2

sum of money due under the agreement.  From these facts, BMS has the following claims remaining in this case:

    (1)   breach of the SLA;

    (2)   breach of the Letter of Intent;

    (3)   two separate copyright claims based on Madison River's acts to avoid using licenses;

    (4)   one copyright claim for copying the CUTS specifications; and

    (5)   three fraud-based claims deriving from the negotiations surrounding formation of the First Amendment and Letter of Intent.

**II.  ANALYSIS**

Federal Rule of Civil Procedure 50(a)(1) provides that

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

This is also a "directed verdict" motion.  "[W]hen considering a motion for a directed verdict, [the court] must view the evidence in the light most favorable to the non-moving party." Townley v. Norfolk & Western Ry. Co., 887 F.2d 498, 499 (4th Cir. 1989).  In this analysis, "[t]he court . . . must [also] determine whether a reasonable trier of fact could draw only one conclusion from the evidence."  Id.

    A.   Fraud-Based Claims

BMS claims Madison River procured the 2002 settlement agreement through various fraud-based acts (fraudulent

3

inducement, negligent misrepresentation, and fraudulent concealment). BMS has failed to present any evidence from which a reasonable jury could conclude that Madison River procured this agreement through any of these fraud-based actions.

BMS's fraudulent inducement and negligent misrepresentation actions fail as a matter of law because BMS has no evidence showing a false promise at the time the parties formed the 2002 settlement agreement. Colorado law guides all three fraud actions. (See Mem. Op. & Order of 8/30/2005 at 17-19; Mem. Op. & Order of 11/25/2005 at 4-6.) Under Colorado's law for fraudulent inducement, a party must have evidence showing a misrepresentation of existing fact, which includes a "promise concerning a future act . . . coupled with a present intention not to fulfill the promise." Kinsey v. Preeson, 746 P.2d 542, 550-51 (Colo. 1987) (emphasis added) (quoting Stalos v. Booras, 528 P.2d 254, 256 (Colo. Ct. App. 1974)). Under Colorado's law for negligent misrepresentation, a plaintiff must show, among other elements, a defendant "supplie[d] false information for the guidance of others in their business transactions." First Nat'l Bank in Lamar v. Collins, 616 P.2d 154, 155 (Colo. Ct. App. 1980) (emphasis added) (quoting Restatement (Second) of Torts § 552 (1976)). Both of these causes of action, thus, require a present statement of false information. Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1266-67 (10th Cir. 1989). BMS vigorously argues that, in creating the 2002 settlement agreement, Madison River gave then-false information to induce

4

BMS to agree. In part, Madison River agreed (1) to do a "preliminary assessment" and then (2) to consider if it would purchase additional BMS products. BMS claims it never intended to do so. Not only does the undisputed evidence at trial show Madison River investigated these topics, no evidence shows Madison River never intended, when it formed the 2002 settlement agreement, <u>to conduct</u> an investigation and <u>to consider</u> additional BMS products. Moreover, BMS shows no sufficient evidence of further false statements used to induce the contract. Thus, BMS's claims for fraudulent inducement and negligent misrepresentation fail as a matter of law.

BMS's fraudulent concealment claim fails as well. "To succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must show that the defendant had a duty to disclose material information. A defendant has a duty to disclose to a plaintiff with whom it deals material facts that <u>in equity or good conscience should be disclosed</u>." <u>Poly Trucking, Inc. v. Concentra Health Servs., Inc.</u>, 93 P.3d 561, 564 (Colo. Ct. App. 2004) (emphasis added). Colorado law looks to the Restatement (Second) of Torts for guidance in determining when a duty exists. <u>Id.</u> The Restatement (Second) states that a party must disclose facts in, among other situations, fiduciary or analogous relationships, cases where disclosure is needed to clear up a prior assertion of fact, or cases where the party knows the other party is under a mistaken belief and the relationship between the parties is such that one "would reasonably expect a disclosure of

5

those facts." Id. (quoting Restatement (Second) of Torts § 551(2)).  BMS has failed to produce any evidence that the relationship between BMS and Madison River approached anything analogous to these relationships.  The evidence shows nothing more than a garden-variety contractual relationship insufficient as a matter of law to create a disclosure duty.  Because no evidence supports imposing, in equity or good conscience, a disclosure duty upon Madison River, BMS has failed to produce sufficient evidence to support its nondisclosure claim.

      B.    Effect of the First Amendment's Release

Because these fraud-based claims fail, the First Amendment's release is fully enforceable.  The parties released "any and all claims, demands, liabilities, responsibilities, or causes of action raised in connection with any disputes in conjunction with [Madison River]'s performance under the Original SLA . . . up to and through the date of this First Amendment."  (Madison River's Trial Ex. 3 at 1-2 (emphasis added).)  Under Colorado law, which applies by virtue of the contract's choice-of-law clause and the appropriate governing law in this court, the scope of a release is a question of intent:  "A court is to construe a release to effectuate the manifest intention of the parties.  Such construction rests on good sense and [a] plain understanding of the words used and the acts directed to be performed."  Artery v. Allstate Ins. Co., 984 P.2d 1187, 1191 (Colo. Ct. App. 1999).  Under the release's plain language, the parties released any claim "raised in connection with any disputes in conjunction with

6

[Madison River]'s performance under the Original SLA (<u>including but not limited to any excess License Software usage by [Madison River]</u>) up to and through the date of this First Amendment." (Madison River's Trial Ex. 3 at 2 (emphasis added).) This release as a matter of law bars all claims for the SLA's breach and copyright infringement.

By its explicit terms, the release bars BMS's claim that Madison River used excess licenses without proper payment under the SLA. The release also bars the copyright claims because those claims (1) relate to Madison River's SLA obligations and duties and (2) arise prior to the settlement date. BMS's copyright claim that Madison River wrongly, prior to December 5, 2002, copied the TCS Database to avoid excess license usage relates to Madison River's license rights under the SLA. BMS's copyright claim that Madison River used, prior to 2002, another computer program to avoid excess license usage also relates to Madison River's license rights under the SLA. Finally, BMS's copyright claim that Madison River, prior to the settlement date, wrongfully copied BMS's specifications in creating a "CUTS" program, which required alteration of BMS's code, is a claim "raised in connection with any dispute[] in conjunction with" Madison River's performance under the SLA. That claim came from the same body of facts from which the other disputes arose, and the SLA specifically barred program modification. Thus, the

7

release also bars this claim.[1]  Because all of these claims arose from the facts that occurred prior to settlement and that derive from Madison River's performance due under the SLA, the release in the settlement agreement bars these claims for contract breach and copyright infringement.

    C.    Breach of the Letter of Intent

Finally, BMS's last claim, that Madison River breached the Letter of Intent, fails as a matter of law.  In a prior order, this court held that breaches of the Letter of Intent could include breaches of not only the express terms but also any obligations proved by parol evidence or imposed under good-faith and fair-dealing duties.  (See Mem. Op. & Order of 8/30/2005 at 42-45.)  Under the Letter of Intent's express terms, Madison River had to (1) meet on or before December 13, 2002, to discuss an expanded business relationship between the parties, (2) complete a preliminary assessment, which would "consider among other factors technical, financial, . . . and legal impacts" (Madison River's Trial Ex. 4 at 1), and (3) express in writing its intent whether or not "to roll out additional BMS products" (id. at 2).  If Madison River chose not to roll out additional products, then it would pay a sum of money to BMS.  The undisputed evidence shows Madison River conducted some preliminary assessment in accordance with the contract's limited

---

[1] Even without the release, the copyright claims would fail on their face.  BMS failed to produce evidence to support the claims substantively, as tailored by this court's previous summary judgment and reconsideration of summary judgment rulings.

8

description of what the assessment must include, notified BMS in writing that it would not roll out additional products, and paid the sum of money.  No evidence supports a breach of the contract's express terms.  Furthermore, no evidence suggests any agreements outside of the contract's written terms existed or were breached.

Finally, no evidence can reasonably support breaches of good-faith and fair-dealing covenants.  "The good[-]faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations."  Amoco Oil Co. v. Ervin, 908 P.2d 493, 498 (Colo. 1995).  No evidence suggests Madison River's actions in any way dishonored the parties' reasonable expectations or intentions under the sparsely worded Letter of Intent.

## III. CONCLUSION

For these reasons, all of BMS's claims fail as a matter of law, and Madison River is entitled to judgment as a matter of law.  Thus, this court will grant Madison River's motion.  An order and judgment will be entered in accordance with this memorandum opinion.

This the 11th day of July 2006.

/s/ William L. Osteen
United States District Judge